```
              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF OREGON


LARRY O. HEER and ALFRED HOLMAN,    )
                                    )
               Plaintiffs,          )   Civil No. 04-6211-HO
                                    )
                                    )
               v.                   )   ORDER
                                    )
STATE FARM FIRE AND CASUALTY COMPANY,)
an Illinois corporation,            )
                                    )
               Defendant.           )
_____)
```

Plaintiffs allege that they are owners of a single family dwelling used as rental property located in Albany, Oregon. Defendant insured the property in 2002 and 2003. Plaintiffs allege that in October of 2002, a failed pipe caused accumulation of water beneath the property and subsequent growth of toxic mold throughout the structure, requiring evacuation of the tenants.

Defendant covered the resulting claim. Plaintiffs allege that defendant paid for mold inspection, but refused to pay for complete

repair of the mold damage, which has rendered the structure uninhabitable. Plaintiffs allege that defendant repeatedly delayed payment for repair or authorization of complete repair while it hired testing companies and engineers to examine the nature and extent of the mold contamination.

On or about November 25, 2003, defendant notified plaintiffs that it believed certain mold contamination was not caused by water accumulation in the crawl space beneath the house and refused further payment for repair.

Plaintiffs allege that the delay caused by State Farm has resulted in contamination to the point that the cost of repair exceeds the value of the house.

Plaintiffs further allege that defendant also hired an engineer to spray water at high pressure into siding, windows and portions of the roof which caused leaks. Plaintiffs maintain that defendant instigated these tests to assert a different basis for the mold infestation and thereafter encouraged plaintiffs to file a claim for leaking windows in an effort to divert attention from the water in the crawl space.

Plaintiffs also allege that defendant encouraged plaintiffs to conceal the potential severity of the mold infestation from the tenant and to allow the tenant to take personal belongings to another rental property owned by plaintiffs. Plaintiffs allege that

defendant then refused to pay for testing of the second rental property possibly infested with mold from the personal belongings.

On May 11, 2004, defendant notified plaintiffs that it would refuse to renew the policy on the property as of July 15, 2004, because the building is vacant, because there have been too many claims associated with the property, and because of missing siding.

Plaintiffs allege claims for breach of contract, and breach of the covenant of good faith and fair dealing. The court previously granted summary judgment in favor of defendants with respect to plaintiffs' claim for breach of the covenant of good faith and fair dealing for not renewing the insurance policy. Defendant now moves for summary judgment on plaintiffs' remaining breach of contract claim. Defendant also moves to strike the affidavit of Timothy P. Newell, the NVL laboratory reports attached to the affidavit of Larry Heer and attached to the affidavit of Jim Nelson, the reference in the affidavit of Larry Heer to the types of testing that Mr. Harter allegedly witnessed Mr. Meltzer conduct, and the affidavit of Larry Heer with attached deposition testimony of J.T. Plummer.

Plaintiffs contend that the failure of a P-trap located beneath the house's crawl space under the bathroom caused water to accumulate under the dwelling which then caused the growth and spread of toxic mold throughout the entire house. Defendant asserts that plaintiffs have failed to come forward with any expert witness or any evidence

3 - ORDER

that it has failed to pay for the damages as required under the contract of insurance.

Plaintiffs concede that the only issue regarding their breach of contract claim "is the cause of the mold contamination inside the house and inside the attic which requires more extensive remediation or may require the demolition of the structure." Plaintiffs' Memorandum in Response (#67) at p. 2. The broken pipe is a covered loss and, thus, if the pipe caused the mold infestation in the rest of house, the damage is covered. Defendant offers expert evidence that the mold growth under the house related to the pipe is not the cause of the mold contamination in the rest of the house and attic.

Defendant hired Lonie Swenson of Veritox, Inc.[1] and Douglas Meltzer of BMPG Engineers[2] to inspect the property.

Swenson opined that the visible mold in the attic was not related to the mold in the crawl space. Swenson ultimately concluded that there is no basis for finding that the small amounts of mold growth observed inside the house and attic are the result of mold colonization that may have developed in the crawl space under the house. Specifically, Swenson stated:

> Standing water and mold growth on the materials in the crawlspace would not have resulted in mold growth on the interior surfaces in the bathroom unless the building

---

[1] Swenson's report is attached to Defendant's Concise Statement of Facts (#61) as Exhibit D. Defendant has also submitted an additional affidavit from Swenson which is document #71.

[2] Meltzer's report is attached to Defendant's Concise Statement of Facts as Exhibit E.

4 - ORDER

> materials in the bathroom extended down through the crawlspace and sat in standing water for an extended period of time. I saw no evidence that this was the case....
>
> The samples taken by certified industrial hygienist Paul Carlson in 2003 show that the dominant mold species in the walls and attic were not present in the crawlspace samples, and that the mold species found in the crawlspace were not found in the ductwork. Per Mr. Carlson's report of September 29, 2003, the samples also indicate that marker species, which are species that indicate "unusual growth and amplification, were detected in the same relative proportions in both the indoor and the outdoor samples. These sampling results do not support the claim that potential mold growth in the crawlspace from the P-trap water leak was disseminated to interior living spaces. They also do not support any claim of interior spaces being "contaminated" by mold....
>
> There is no need to tear down the house for mold remediation purposes. I saw no indications of extensive mold colonization inside the walls that had been opened or on undisturbed surfaces within the interior of the living spaces of the home. The house is not "contaminated"; it simply needs to be cleaned.

Expert Disclosure by Lonie Swenson attached as exhibit D to Defendant's Concise Statement of Facts (#61) at pp. 4-5.

After a September 5, 2003 visit, Meltzer concluded that the mold found inside the house is the result of construction defects and lack of maintenance and housekeeping rather than from mold spores that colonized in a space under the house. Meltzer returned in November of 2003 and July 18, 2005. In his opinion:

> water or water vapor did not move from the crawlspace into the house. The vapor would have to travel through the lower plate, the wooden studs or the insulation between those studs, and the upper plate, in which case there would have been corresponding damage to the intervening wall elements. There was no such corresponding damage....

5 - ORDER

> For the crawlspace moisture to have caused mold in the attic, two levels above, the water vapor and mold would have to have been present throughout the house. The only evidence of mold and water damage is in certain specific areas where there are other verifiable sources of water intrusion....
>
> In each instance of water damage, there was a source of damage. For instance:
>
> a. There is water and mold damage in the walls, exclusively under the sills of the windows. This damage is the result of leaks and condensation from the unsealed windows, rather than water from the crawlspace rising vertically through the floor, into the house, and penetrating walls.
>
> b. There is water damage and insect damage in the bathroom wall adjacent to and below the window, which is the result of the window being framed integrally with the shower and unsealed, so that the shower water runs into the window frame and into the wall. In light of the shower source, the cause was not the result of water or mold coming vertically up through the floor and wall cavity from the crawlspace.
>
> c. There is water or mold stain in the kitchen on a wall adjacent to the bathroom, which was the result of pets or vermin and not water from the crawlspace rising vertically up into the walls.
>
> d. There is mold in the attic, and evidence of moisture in the form of swollen and delaminated plywood sheathing and rusted nails. The roof is in extremely poor shape as is the flashing. The moisture problems in the attic are the result of the roof problems and the lack of adequate ventilation, and not the result of mold and water in a sealed crawlspace two levels below.

Expert Report of Douglas S. Meltzer attached to Defendant's Concise Statement as Exhibit E at pp. 6-7.

Defendant is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Defendant bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" Intel Corp. v. Hartford Ac. & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Plaintiffs oppose summary judgment because they dispute the facts underlying the above opinions. Plaintiffs submit the following to rebut defendants's experts:

(1) The drain pipe from the bathtub didn't just leak, it fell off and airflow was free to enter the house.

(2) The cold air return for the furnace was in the hallway outside the bathroom. Plaintiff Larry Heer opines that this created a draw for air near the bathroom door.

(3) Defendant accepted the claim for mold contamination from the broken pipe under the house and paid for ill health effects of airborne mold on inhabitants.

(4) Swenson's finding that contaminated air could not reach the attic is contradicted by the testimony of the owners that there is a pull-down stairway in the ceiling of the hallway outside the bathroom with an opening that they opine allows air to penetrate.

(5) Swenson's conclusion that the air could not reach the attic is also contradicted by the observations of a private investigator who observed and videotaped smoke generated in the hallway flowing into the attic through observable air gaps around the pull down stairway.

(6) Swenson's conclusions are contradicted by the NVL labs report she cites as one of the sources of her information.

The lab report recites that the crawlspace mold had a pathway to migrate through the house.

Plaintiffs contest Meltzer's opinion by also claiming he failed to note that the P-trap was completely disconnected and claiming that his conclusions are speculation with no factual support.

Although plaintiffs fail to proffer admissible expert opinion on the issue, the NVL lab report does state that visible mold growth points to water intrusion, "the most likely source would be the leaking P-trap that flooded the crawlspace." See Ex. D. attached to Plaintiff's Response at p. 18. The report also states that "[t]he elevated moisture content was considered directly related to the reported leak of the P-trap under the bathtub and this most likely facilitated mold growth in other areas." See id. at p. 20. While the NVL lab report is hearsay, the report was commissioned by defendant and used by defendant's experts in forming their conclusions. Thus, plaintiff's may, at a minimum, rely on the reports to attack the credibility of defendant's experts, which creates issues of fact.

Defendants move to strike much of plaintiffs proffered evidence such as the affidavit of Newell as untimely disclosed and improper expert testimony, the NVL lab reports as hearsay, reference to testing conducted by Scott Harter[3] offered by Larry Heer as hearsay,

---

[3] Harter states that he observed the spray testing by Meltzer and contends that it was very high pressure and not indicative of normal rainfall.

9 - ORDER

Jim Nelson's reference to J.T. Plummer's testimony[4] as false, and Heer's statement regarding the completely diminished value of the property as unqualified expert opinion. Much of the proffered evidence is inadmissable, however the court has parsed out the wheat from the chaff and, after doing so, declines to grant summary judgment on this record. Based on the NVL lab report and plaintiffs' own personal observations regarding airflow, there are issues of fact concerning the plaintiff's claimed mold damage. Defendant's motion to strike is well-taken in some respects, but not sufficiently to obtain summary judgment on all of plaintiff's contentions.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (#59) is denied and the motion to strike (#71) is granted to the extent that the court has not considered inadmissable evidence for the truth of the matter asserted in finding issues of fact.

DATED this 6th day of July, 2006.

_Michael R. Hogan_
United States District Judge

---

[4] Plummer is a claims representative and Nelson states that Plummer confirmed that he hired another expert to examine the premises and the expert started with skepticism that mold could have migrated.

10 - ORDER